Kennebec & Portland Railroad Co. *v.* White.

---

## KENNEBEC AND PORTLAND RAILROAD COMPANY *versus* WHITE & al. *Administrators.*

In an action where the plaintiff's right to recover rests on the ground that the defendant had violated his special agreement, the refusal to instruct the jury that a committee representing plaintiffs were *competent to complain* of the infraction of the contract is not open to exceptions, inasmuch as it is immaterial to the issue.

Where the defendant was the owner of a steamboat and one half of the boat of plaintiffs, and it was agreed to stock the gross earnings of both boats and divide their proceeds equally with the owners, at the termination of the season, and the defendant received the entire earnings; *Held,* that to entitle plaintiffs to recover in an action on an account annexed for their part of the earnings, they must show that defendant had some earnings of *both* boats, which of right belonged to them.

ON EXCEPTIONS, RICE, J., presiding.

ASSUMPSIT, to recover one half of the net earnings of the steamboat J. D. Pierce, for 1851.

It was in evidence that the plaintiffs purchased one half

of the steamboat in May, 1851, and that the net earnings for that year were $3664,83, which were paid into the hands of defendants' intestate, but $1000 thereof had been paid to plaintiffs.

In defence evidence was introduced tending to show that in 1850, the steamboat Lawrence was run on the Kennebec in opposition to the J. D. Pierce, and that a committee of the board of Directors of the K. & P. R. R., consisting of Reuel Williams and two others, met the owners of the Lawrence in May, 1851, when it was agreed that the plaintiffs should purchase one half of the J. D. Pierce, and the owners of the Lawrence the other half, (she being then owned by one Pinkham,) and to stock her gross earnings with those of the Lawrence, to be equally divided between their respective owners at the close of the season; the directors of the railroad to control as to the fare, the hours she should run, and the trains with which she should connect.

The Pierce was bought accordingly.

The two boats ran awhile alternately, between Augusta and Bath, but their earnings were not enough to pay their expenses, and in June following, it was agreed by all concerned that the Lawrence should be withdrawn and run elsewhere. Captain Kimball was to have the general charge of the Pierce.

One witness stated he had seen a letter among the papers of the intestate, written to him by Reuel Williams, which he once read, but could not state its contents. There was in it some complaint about the running of the Pierce. (Notice had been given to defendants' counsel to produce this letter, but they declined.)

The plaintiffs requested the instruction, that the writing and sending that letter, by the president of the board of railroad directors, was, in the absence of proof to the contrary, to be presumed to be the act of the whole board, or at least, in connection with the opinion of Henry Reed, (as testified to by him) on the same subject, it was to be presumed to be the act of said committee, and as that

Kennebec & Portland Railroad Co. *v.* White.

committee were authorized to stipulate the terms of the said purchase of the Pierce, they were competent, as such, to complain, in behalf of the whole board, of any violation of those terms; and the Court was desired so to instruct the jury, which was not given; but the Court did instruct the jury that the plaintiffs would be entitled to recover the balance of one half of the net earnings of the Pierce (one thousand dollars having been paid,) unless they were satisfied that there was a contract entered into by them, by which the earnings of the Pierce were to be stocked with the earnings of the Lawrence. If they were satisfied that such a contract had been made, the plaintiffs would still be entitled to half of the earnings of the Pierce, provided they were satisfied that the owners of the Lawrence had violated the terms of that contract; but if such a contract existed, and had not been violated, then the plaintiffs would not be entitled to recover, unless it was made to appear that the defendants' intestate held in his hands funds, the proceeds of the earnings of both boats, which belonged to plaintiffs.

The verdict of the jury was for defendants, and the plaintiffs excepted to the instructions given, and the refusal to give those requested.

*J. H. Williams*, in support of the exceptions.

1. The instructions *asked for* by plaintiffs, were proper and important, in connection with the second clause of the instructions actually given, as to "violation" of the terms of the bargain as set up by defendants.

2. The third clause of the instructions given was wrong.

Plaintiffs had made out their case and rested. Defendants met it by setting up a *special* bargain, the operation of which they contended went to defeat plaintiffs' case.

The burden was on *them* to show in proof every thing necessary to exhibit such a result, fully and completely. 13 Pick. 77; 2 Denio, 616.

But there was no proof, in fact, of the earnings or losses of the Lawrence. And no presumption existed as to whether she earned or lost, or as to the amount of either loss or gain.

(The counsel also argued a motion, which was filed, to set aside the verdict as against evidence.)

*L. M. Morrill, contra.*

APPLETON, J. — The plaintiffs and Greenleaf White were the owners of the steamboat J. D. Pierce and this action is brought against the administrators on his estate to recover their share of her earnings.

From the testimony of Henry Reed, one of the directors of the plaintiff corporation, it appears that in 1850, the owners of the Steamboat Lawrence, of which the defendants' intestate was one, had run her in opposition to the J. D. Pierce, then owned by one Pinkham, and had lost money by the competition. The plaintiffs' railroad was so far completed in January, 1851, as to run one train a day from Richmond to Portland. A committee of the board of directors was raised to confer with the owners of the Lawrence, and in May following an arrangement was entered into between them, by which the plaintiffs were to purchase half of the J. D. Pierce and the owners of the Lawrence were to purchase half; and to stock her gross earnings with those of the Lawrence; to be equally divided between the owners of the J. D. Pierce and those of the Lawrence at the close of the season; the fare and hours at which she was to run and the trains she was to hit, to be subject to the wishes of the Railroad Directors. The Pierce was accordingly purchased. The defence is, that she was run under this agreement and that there was no balance due.

The plaintiffs claimed that the Pierce was not run in accordance with their interests and wishes. It seems that Reuel Williams was one of the directors who participated in making the contract referred to; that he was president of the board of directors; and that a letter was written by him to White, making complaints in reference to the running of the J. D. Pierce. The defendants were notified to produce this letter, but did not. All that is known of its contents appears in the testimony of E. G. Hedge, who, on

cross-examination, said that he had once read the letter, that it was some time ago ; that he could not state its contents; that there was some complaint about the running of the J. D. Pierce. The counsel for the plaintiffs requested the Court to instruct the jury " that the writing and sending that letter by the president of the board of railroad directors, being also of the committee aforesaid, was, in the absence of proof to the contrary, to be presumed to be the act of the whole board, or at least in connection with the opinion of Henry Reed, ( as testified to by him, ) on the same subject, it was presumed to be the act of said committee, and as that committee were authorized to stipulate the terms of said purchase, they were competent as such to complain in behalf of the whole board, of any violation of the terms." This instruction was refused.

From the evidence as reported it does not appear that the letter was signed by Mr. Williams officially, or as acting in behalf of the board of directors, or by their direction. From this no inference could justly be drawn that he was acting in accordance with the directions of the committee, when it neither appears that he claimed to be so acting, nor that the committee ever gave him any directions whatsoever.

The specific acts in reference to which complaints were made, are not stated. The rights of the parties are not dependent upon the competency of the directors to complain but rather on the grounds of those complaints, whether well founded or not. The competency of the directors to complain was of no importance. The real issue was as to the violation of the contract by the parties thereto, and in relation to this, the plaintiffs have no just cause of complaint, that the instructions were not sufficiently favorable to them.

If there was such a contract as the defendants set up, the rights of the plaintiffs rest upon it, and their only remedy is in claiming, by due process of law, damages for its violation. The present suit is brought on no such contract, but is rather based on a denial of its existence. If a

suit had been brought on such contract, the burthen would have been on the plaintiffs to show the amount due, before they would have been entitled to recover. This they are none the less bound to do in the present aspect of the case, for they are not to be benefitted by ignoring a contract, which the jury have found to exist.

The instructions given afford no grounds of complaint.

There is no sufficient evidence to satisfy us that the verdict was so much against the weight of the evidence as to show that there was misconduct or intentional error on the part of the jury.        *Exceptions overruled.*

*Motion denied.*

SHEPLEY, C. J. and TENNEY and CUTTING, J. J., concurred.